In re Stittgen.

In re Stittgen.

*May 24, 1901.*

Habeas corpus: *Infants: Guardianship: Custody: Circuit courts: Jurisdiction: Parent and child:* Res adjudicata.

1. Where the circuit court has made an order relative to the guardianship and custody of an infant, the only question to be reviewed on an original writ of *habeas corpus* issued out of the supreme court is the jurisdiction of the circuit court in making such order.

2. In such limitation of questions reviewed the word "jurisdiction" must be understood in its fullest and most comprehensive sense: the circuit court does not sit as a mere magistrate or statutory tribunal, only *quasi*-judicial in character; its jurisdiction does not depend alone upon having the subject matter legally within the scope of its powers; nor is its jurisdiction lost by disregard of procedure according to law, but if it has acquired jurisdiction of the parties, and has authority over the subject matter, that must be the end of the inquiry.

3. The circuit courts of this state, in dealing with the subject of guardianship and custody of minors, act *judicially* as courts, with all the powers, ancient and modern, of both chancellor and the court of chancery, and may, in a proper case, override alike the natural rights of the parents, and the legal rights of those to whom guardianship has been accorded, either under police power or other statutory authority, and so direct with reference to the minor's custody as to promote its best welfare.

4. In a divorce action in the circuit court the custody of petitioner's minor daughter was awarded to her. Thereafter, on application to the county judge under sec. 4587*b*, S. & B. Ann. Stats., petitioner was adjudged an unfit person to have the custody of her daughter, who was committed to the custody of the superintendent of a society for the care of children, whence, by *habeas corpus*, petitioner again gained control of the child, the superintendent being unwilling to defend against the proceedings. Thereafter the child's uncle petitioned said circuit court for the appointment of a guardian of the person of the child, alleging that the mother was an unfit person to have its custody, which was established on a trial, and that court appointed the child's aunt guardian and ordered the mother to deliver the child to her. *Held,* that the previous proceeding did not forestall the powers of the circuit court, nor exclude it from considering and deciding that the child's welfare required her withdrawal from the control and custody of her mother and committal to that of the guardian, and such decision will not be reviewed on *habeas corpus.*

5. In such case, it affirmatively appearing that petitioner's character, life, and surroundings were unfit for contact with the child, the supreme court would, in *habeas corpus* proceedings, deny the relief asked, even were the guardian's custody of the child unsupported by any order of court or other legal right.

APPLICATION for a writ of *habeas corpus.*

Proceeding by original writ of *habeas corpus,* issued from this court upon a petition of *Frederika Stittgen,* the mother of a nine-year old girl, Lillie, asserting her detention by *Mrs. Harry Ernst,* and seeking her enlargement and delivery to the petitioner. From the return it appeared that at the suit of *Frederika Stittgen* a divorce was decreed by the circuit court for Milwaukee county on December 3, 1898, which, among other provisions, awarded to the mother (this

In re Stittgen.

petitioner) the custody of certain of the children, including the daughter Lillie; that thereafter, upon application to the county judge of Milwaukee county under sec. 4587b, Stats. 1898, petitioner was decided to be unfit to have the custody of the two daughters, Lillie and Ella, and the former was committed to the guardianship and care of the Reverend C. Eissfeldt, as superintendent of a society for the care of children, whence, by *habeas corpus* proceedings, the child was afterwards withdrawn, by reason of the unwillingness of Mr. Eissfeldt to contend against such proceeding, and delivered to petitioner. On September 28, 1900, one John Stittgen, a brother of the father, made application to the circuit court for Milwaukee county that he or some other suitable person be appointed guardian of the person of Lillie upon the ground that the mother is an unfit person. Upon due notice, the matter of that petition was referred to Hugh Ryan, Esq., a commissioner of the circuit court, before whom an extended trial was had, in which the unfitness of the mother was made to appear in very extreme degree, and Mr. Ryan so reported. It is not necessary to defile the records of this proceeding with the particulars. By his report the commissioner also recognized the impropriety of any control over the child by the father, in deference to the decree of divorce adjudicating against his custody, and reported the unsuitability of the said uncle, John Stittgen, by reason of his close association with the father in residence and business, and reported that an aunt of the child, *Mrs. Harry Ernst*, resident at Beaver Dam, and her husband, were suitable and proper persons to have the care and custody of the child, they having expressed a willingness to accept the responsibility and to perform the duties thereof. Upon this report the circuit court on February 2, 1901, entered its order:

"That the report of the referee be, and the same is, in all respects confirmed, and that *Mrs. Harry Ernst*, Beaver Dam, Wisconsin, be, and she hereby is, appointed guardian of said

minor child, Lillie Stittgen. Further ordered that *Frederika Stittgen*, mother of said minor child, Lillie Stittgen, be, and she hereby is, required to deliver the said minor child, Lillie Stittgen, forthwith to *Mrs. Harry Ernst.*"

After certain obstructive and dilatory procedure, this order, by the aid of the sheriff, was carried out, and Lillie taken into the custody of her aunt and guardian, *Mrs. Ernst*, who produces her in court, in response to the writ of *habeas corpus*, with a return showing the foregoing facts, which, while traversed, is denied in no material particular. At the close of argument, an order was entered remanding Lillie Stittgen to the custody of *Mrs. Ernst*. A statement of the reasons for such order is deemed advisable.

*W. J. Kershaw*, for the petitioner.

*M. H. Eaton*, for the guardian. [No brief on file.]

The following opinion was filed June 20, 1901:

DODGE, J. The only question which can be reviewed upon the writ of *habeas corpus* is the jurisdiction of the circuit court making the order for the guardianship and custody of this minor. *In re Meggett*, 105 Wis. 291. In this limitation of the question, the word " jurisdiction " must be understood in its fullest and most comprehensive sense. If the circuit court had jurisdiction of the parties and authority over the subject matter, that must be the end of the inquiry; for in this respect that court sits in no sense as a mere magistrate or statutory tribunal, only *quasi*-judicial in its character, where jurisdiction depends not alone upon having the subject legally within the scope of its powers, but also upon procedure in accordance with law, and where jurisdiction is lost by disregard of legal duty, of which illustrations are found in *State ex rel. Wood Co. v. Dodge Co.* 56 Wis. 79; *State ex rel. Heller v. Lawler*, 103 Wis. 460; and *State ex rel. Durner v. Huegin*, ante, p. 185. The circuit court, in dealing with the subject of guardianship and custody of minors, acts as a court, and judicially, in the broadest and highest sense of

that word. It sits as the inheritor of all the judicial powers, ancient or modern, of both chancellor and the court of chancery. *Att'y Gen. v. Railroad Cos.* 35 Wis. 425, 531; *In re Klein*, 95 Wis. 246; *State ex rel. Att'y Gen. v. Portage City W. Co.* 107 Wis. 441, 447. No question is raised but that personal jurisdiction was acquired by due and sufficient notice to all parties in interest. Nor, indeed, does counsel for the petitioner assail the proposition that the subject of guardianship is within the general scope of the equity powers of the circuit court,— a subject which may be considered at rest since the decision in *In re Klein, supra*, where, upon authorities cited, that power is declared to exist within boundaries so broad as to leave it almost unlimited.

The petitioner does, however, insist that in the case under consideration no jurisdiction over the subject existed, for the reason that such subject matter had already been adjudicated in another forum, and in the same forum but in another proceeding, to wit, by the county judge, under sec. 4587*b*, S. & B. Ann. Stats., and the review of his order upon the *habeas corpus* proceeding, and by the circuit court in a divorce action between the parents of this child. The latter circumstance is especially dwelt on, as excluding the jurisdiction of the circuit court upon the present application, for the reason that the custody of the child is still an open controversy, within the control, decision, and regulation of the circuit court, in the exercise of its powers of revision and modification of the judgment in the divorce action. We need not consider whether the circumstance that a subject has already been decided or is pending for decision in another court or proceeding excludes it from the jurisdiction of other courts, in a strict and technical sense, or whether, where such rule is laid down, the word "jurisdiction" is not used loosely, merely to declare the impropriety or illegality of a second court taking cognizance of the subject matter; as, for example, when it is said that

In re Stittgen.

courts in equity have not jurisdiction where there is a plain and adequate remedy at law. It may be debatable whether *res adjudicata* or *pendente lite* is a fact which destroys jurisdiction, strictly, or *ignoring* of which merely constitutes error. We may pass that question, for very brief consideration of the scope and nature of the questions pending before the county judge on the application under sec. 4587*b*, and pending before the circuit court in the action of divorce, will make it obvious that the broad power of the court of equity to regulate guardianship and custody of minors has not been exhausted by either. That it is not so exhausted by the proceeding before the county judge is already decided (*In re Klein*, 95 Wis. 246), and, if the final order of the county judge cannot so exclude the general jurisdiction of the circuit court, of course the revision or practical reversal of that order upon *habeas corpus* cannot. Decision by another court or magistrate upon the legality or illegality of the county judge's action gives no new or added breadth to that order. Considerations similar to those suggested in *In re Klein, supra,* lead to a like conclusion as to the noneffect of the action of the circuit court in the divorce proceeding to exclude the equity powers of that court over the general subject of the child's custody. The three proceedings illustrate three entirely distinguishable phases of the subject of legal control over the custody of children. Underlying all is the inherent legal and natural right of the parents, and in ordinary circumstances of the father, to exercise full custody and control over the children. Except in extraordinary — nay, extreme — cases, this legal authority is so buttressed in natural law that it should remain undisturbed. The sense of parental duty and affection is so essential a part of human nature, and reliance thereon is so important to develop the reciprocal filial affection and confidence which is so necessary to the best development of character in children, if they are to be qualified for the po-

sition of moral and useful citizens thereafter, that interference with those relations and influences can seldom be wise, though in exceptional cases it becomes not only wise, but imperatively necessary. When the normal relation of the family, with the two parents co-operating in the care, nurture, and development of their children, must be broken, under the divorce laws, of course an abnormal situation is brought about; and there, in the light of all the facts and circumstances, the court which severs that relation between the parents is vested with the power to decide to which of them shall be intrusted the authority and parental duty to the child, which can no longer be exercised by both jointly. While the power of the court is not strictly limited so but that the welfare of the child is properly taken into consideration, still the decision is as to the relative rights and obligations of the two parents litigant, and such is the limit of the field of consideration and decision then before the court. This is shown by the statute regulating the matter (secs. 2362, 2363, Stats. 1898).

Distinct from this question of relative rights and duties of the parents upon the severance of the marital relation between them and disintegration of the family, there is the interest of the public that children shall not be exposed to abuse or to perverting and debauching influences, tending to their injury and disabling them to become fit members of society. The right and duty of the government to take precautions to this end is but an exercise of the police power, and in the performance of that right and duty and the exercise of that police power is sec. 4587b, S. & B. Ann. Stats., vesting in the county judge authority to remove the child from the custody of those who otherwise would be entitled to and charged with its custody and nurture. But there is still a third and broader aspect of the situation, and that is the right of the child to have its own welfare considered; and upon that right rests the power, now under

consideration, of the court of equity, originally the custodian of the conscience of the monarch in his paternal relation to all his subjects, to act when a case calling for such action is presented, and to override alike the natural rights of the parents, the legal rights of those to whom guardianship has been accorded, either under the police power or under other statutory authority, and to so direct with reference to the custody of the child as shall be promotive of its best welfare. The action of the court of equity is not in repudiation of the legality or the authority of either natural guardians or guardians appointed by other courts. It is but the exercise of a higher and more general duty of care for the welfare of all infants. Hochheimer, Infants, § 15; *Markwell v. Pereles*, 95 Wis. 406.

From these definitions of the purposes for which the various jurisdictions are exercised, it is obvious that none of the antecedent proceedings have forestalled or exhausted the field upon which the circuit court entered in making the order now assailed. That order is not dependent either upon the police power of the state, or upon the right of either parent as against the other, but rests upon considerations of the welfare of the child itself, is higher and more ample than either of the others, and calls for a wisdom and breadth of view equaled by few judicial functions. Nothing appears which in any respect excluded the circuit court from considering and deciding, under its power as a court of equity, that the welfare of Lillie Stittgen required her withdrawal from the control and custody of her mother, and committal to that of the respondent. We cannot, on *habeas corpus*, review that decision, but must remand the child to be held in obedience thereto.

Even were the respondent's custody of the child unsupported by any order of court or other legal right, we should reach the same conclusion. This court, as indeed most others, has consistently held that, upon *habeas corpus* proceed-

Pittsburg Testing Laboratory vs. Milwaukee Electric R. & L. Co.

ings by a parent to enforce his legal right to the custody of his child, the court should deny the order if it clearly appears that the parent is such a person that the welfare of the child must suffer under his control. *Markwell v. Pereles, supra; In re McChesney,* 106 Wis. 315; *Lemmin v. Lorfeld,* 107 Wis. 264. True, the unfitness must very clearly appear, and in no doubtful case should the natural right of both the parent and child to parental care and custody be denied; but in the case before us the petitioner's character, life, and surroundings are so shockingly unfit for contact with a little girl that we could have no hesitancy in refusing to subject her to them.