**THOMASON et al. v. McGEORGE.**
(No. 648–4498.)

(Commission of Appeals of Texas, Section B.
June 16, 1926.)

1. **Guardian and ward** ⬤═13(3)—**Father, voluntarily appearing in proceedings to appoint guardian of minor child cannot contest jurisdiction of court for failure to receive "notice" of proceedings.**

In application for appointment as guardian of minor child, father, as natural guardian, voluntarily appearing and moving to set aside temporary appointment and opposing application to make appointment permanent, cannot contest jurisdiction of court to appoint guardian for failure to receive notice of proceedings; object of notice being to give one opportunity to be heard in defense.

2. **Guardian and ward** ⬤═13(3).

Father of child as its natural guardian is entitled to notice of proceedings to appoint another as guardian over child.

3. **Guardian and ward** ⬤═2, 8—**Constitution held to grant district court general control over guardians and minors and county court jurisdiction to appoint guardians of minors; jurisdiction in each instance being exclusive (Const. art. 5, §§ 8, 16).**

Const. art. 5, §§ 8, 16, clothes district court with common-law chancery jurisdiction of general control over guardians and minors, and vests in county court jurisdiction to appoint guardians of minors and transact all business appertaining to minors; jurisdiction in each instance being exclusive.

4. **Guardian and ward** ⬤═2, 8—**Control of district court over guardians and minors is superior to county court, but is not a probate jurisdiction to appoint guardians and control minor over which county court has exclusive and district court appellate jurisdiction (Const. art. 5, §§ 8, 16).**

Control given district court by Const. art. 5, §§ 8, 16, over guardians and minors is superior to that given county court, but is not a probate jurisdiction involving appointment of guardians or control of minor, which is exclusive in county court, and over which district court has appellate jurisdiction only.

5. **Guardian and ward** ⬤═4.

Rights of parent as natural guardian of minor child are subordinate to powers of district court over guardians and minors.

6. **Guardian and ward** ⬤═2—**Exclusive jurisdiction of district court to adjudge child dependent or neglected is not probate jurisdiction, and does not interfere with county court's jurisdiction to appoint guardians and transact business appertaining to minors (Rev. St. 1925, arts. 2329–2338).**

Exclusive jurisdiction, conferred on district court by 'Rev. St. 1925, arts. 2329–2338, to adjudge child dependent or neglected, is not a probate jurisdiction, though act refers to guardianship in connection with awarding custody and control of minor, and such jurisdiction does not interfere with jurisdiction of county court to appoint guardians of minors and transact all business appertaining to minors.

7. **Guardian and ward** ⬤═4—**County court as court of original jurisdiction has authority to appoint guardian of minor, though parents are living; "minor" (Rev. St. 1925, tit. 69, arts. 4102, 4104, 4118, 4224).**

Under Rev. St. 1925, tit. 69, arts. 4102, 4104, authority of county court as court of original jurisdiction to appoint guardian of minor includes all minors whether with or. without living parents, though articles 4118, 4224, recognize father as natural guardian; term "minor" not being synonymous with orphan.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Minor.]

8. **Guardian and ward** ⬤═4.

Court of equity may take custody of child from its parents, where best interests of child demand such course.

9. **Guardian and ward** ⬤═8—**County court is not deprived of jurisdiction to appoint guardian over child having parents by reason of district court also having jurisdiction over child (Rev. St. 1925, arts. 2329–2338; Const. art. 5, §§ 8, 16).**

That district court has jurisdiction under Rev. St. 1925, arts. 2329–2338, to consider interest and award custody of child having parents does not deprive county court of jurisdiction to appoint guardian over child under Const. art. 5, §§ 8, 16.

10. **Guardian and ward** ⬤═4.

Rev. St. 1925, arts. 2329–2338, 4118, 4234, do not require county court to recognize father as guardian whom district court is required to repudiate as unfit.

11. **Guardian and ward** ⬤═4—**Father joining issue in hearing on application for appointment of temporary guardian for child, alleging father to be unfit, may be removed as natural guardian if found unfit (Rev. St. 1925, art. 4109).**

Application for appointment of temporary guardian under Rev. St. 1925, art. 4109, alleging father of minor child to be unfit, is broad enough to demand removal of father as natural guardian, and father, joining issue in hearing on application, may be removed as natural guardian, if found unfit.

12. **Appeal and error** ⬤═843(2).

Where father joined issue in application for appointment of temporary guardian of minor child declaring him unfit, question whether county court has jurisdiction to determine guardianship without prior order removing father as natural guardian became moot.

13. **Guardian and ward** ⬤═25.

Though unfitness does not come literally within grounds for removal of guardian under Rev. St. 1925, art. 4234, it is within spirit of law.

Error to Court of Civil Appeals of Third Supreme Judicial District.

⬤═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Application by Mrs. Mollie McGeorge, to be appointed guardian of Louise Thomason, a minor, opposed by C. A. Thomason, father of minor, who filed a counter petition to be appointed guardian. The order of the district court dismissing an appeal from an order of the county court refusing the appointment was reversed, and the cause was remanded by the Court of Civil Appeals (275 S. W. 683), and the father brings error. Affirmed.

Frank H. Sweet and McCartney, Foster & McGee, all of Brownwood, for plaintiff in error.

R. L. McGaugh and Wilkinson & Wilkinson, all of Brownwood, for defendant in error.

SPEER, J. Mrs. Mollie McGeorge made an original application to the county judge of Brown county to be appointed temporary guardian of the person of Louise Thomason, a girl 8 years of age, and prayed that, after notice of the application, she be appointed permanent guardian of the person of said minor. The application showed that the minor's mother was dead, that the father of the minor, C. A. Thomason, was an unfit and improper person to have the care, custody, and education of the minor, setting out specifically various acts of ill treatment, cruelty, etc., on the part of Thomason and his then wife toward the minor. The probate court made an order appointing Mrs. McGeorge temporary guardian of the minor's person and one W. A. Bell guardian of her estate. The father subsequently applied to the county judge for an order vacating the appointment of Mrs. McGeorge as temporary guardian of the minor's person, upon the ground that no notice had been given him of the hearing. At the same time he filed an application to be appointed temporary guardian both of the person and estate of the minor. He afterward filed an amended petition in the form of a bill of review of the order appointing Mrs. McGeorge temporary guardian of the minor's person, alleging that he was in all things qualified to act as such guardian. Mrs. McGeorge filed an answer to this pleading, reiterating the allegations in her original application. The county court upon hearing, ordered that the prior order appointing Mrs. McGeorge temporary guardian be set aside, and that the grandparents of the minor be given her custody and control pending the controversy. The father filed an objection to any further orders in the cause in attempt to continue in force the order appointing Mrs. McGeorge temporary guardian, on the ground that such order was improvidently made, and was void because no notice had been given to him. Mrs. McGeorge answered this pleading, and again reiterated her charges that the father was not a proper person to have the custody of his minor daughter. Thereafter the county court made its final order revoking the appointment of Mrs. McGeorge as temporary guardian and providing that it be not made permanent. At the same time, the appointment of W. A. Bell as temporary guardian of the minor's estate was made permanent. Mrs. McGeorge appealed to the district court, where the father filed a motion to dismiss the cause from the docket for lack of jurisdiction of that court, on the ground that the county court never acquired jurisdiction in the matter, because he was in law the natural guardian of the person of his child, and no order removing him or attempting to remove him was made prior to the time the county judge entered the order appointing Mrs. McGeorge temporary guardian. The district court sustained this motion and dismissed the cause. Thereupon Mrs. McGeorge appealed to the Court of Civil Appeals, and that court reversed the judgment of the district court, and remanded the cause to that court for trial upon the merits of the controversy. 275 S. W. 683. The cause is before us upon writ of error granted under a memorandum as follows:

"We are in doubt as to the jurisdiction of the probate court, in view of articles 4118 and 4234, codification of 1925, and in view of the Delinquent Child Act, if the latter is constitutional."

The principal, and perhaps the only, question involved is presented in plaintiff in error's first assignment to the effect that the county court of Brown county had no jurisdiction to appoint defendant in error as guardian of the person of the minor, without giving any notice to plaintiff in error and without a prior order removing him as guardian of the person of his child.

[1] Whatever may be the rule as to notice to the father of the minor, under such circumstances as these, the question is purely moot under the facts of this case. In any case the object of notice is to give one an opportunity to be heard in defense. The plaintiff in error having been actually before the court prior to and at the time of the rendition of its final judgment, it is idle to say he had no notice of the proceeding. He did have, such notice in so far as any demands of the law are concerned.

[2] We are not to be understood as holding the father was not entitled to notice. We think he was. The statutes recognize the rights of the natural guardian, and of the testamentary guardian, without appointment of the court; and, where one's rights are thus so clearly assailed, he should have notice and opportunity to be heard, before being deprived of them.

But it is further contended that the county court was without jurisdiction because there had been no order of removal of plaintiff in error as guardian of the person of his child. Before considering this feature of the case, we will advert to other jurisdictional questions that lie at the threshold of the inquiry;

these are, first, the effect of the Delinquent Child Act, and, second, whether or not in any event the county court has jurisdiction to appoint a guardian for a minor whose parent is living.

Section 8, art. 5, of the Constitution of the state, provides:

" * * * The district court shall have appellate jurisdiction and general control in probate matters over the county court established in each county, for appointing guardians, granting letters testamentary and of administration, probating wills, for settling the accounts of executors, administrators, and guardians, and for the transaction of all business appertaining to estates; and original jurisdiction and general control over executors, administrators, guardians and minors, under such regulations as may be prescribed by law. * * *"

Section 16 of the same article provides:

" * * * The county courts shall have the general jurisdiction of a probate court; they shall probate wills, appoint guardians of minors, idiots, lunatics, persons non compos mentis, and common drunkards; grant letters testamentary and of administration; settle accounts of executors; transact all business appertaining to deceased persons, minors, idiots, lunatics, persons non compos mentis, and common drunkards, including the settlement, partition and distribution of estates of deceased persons; and to apprentice minors, as provided by law. * * *"

[3-5] In these provisions there is no conflict. Their effect, in so far as the same is material to this case, is to clothe the district court with the old common-law chancery jurisdiction of general control over guardians and minors, and to vest in the county court jurisdiction to appoint guardians of minors and transact all business appertaining to such minors. The jurisdiction in each instance is of course exclusive. In the very nature of such jurisdictions the control thus given to the district court is superior in a sense to that given to the county court. It is superior in the sense that, where the equities and necessities of the case require it, the district court may interfere, if it be an interference, by wresting the custody of a minor from the guardian, and awarding it elsewhere. Indeed, the rights of the parent as natural guardian as well are subordinate to the powers of the district court in this respect. The rights of the state—society—are paramount, and, where the public welfare demands it, the lesser rights of parent, guardian, or whomsoever, must yield. Indeed, what is essentially the same thing, the rights of the minor are themselves superior to the rights of parent, guardian, or other custodian, and will in any case prevail upon considerations of highest public policy. But this jurisdiction is in no sense a probate jurisdiction involving the appointment of guardians or the control of the minor or his estate as affected by the guardianship. In these matters the original jurisdiction of the county court is exclusive, and as to such matters the district court has appellate jurisdiction only.

[6] Now our Delinquent Child Act (articles 2329 to 2338, R. C. S. 1925), creating what is known as the Juvenile Court, declares that:

"When it is sought to have a child adjudged to be a 'delinquent child,' as that term is defined in article. 1083 of the Code of Criminal Procedure, the county courts, district courts, and the criminal district courts shall have original jurisdiction in all such proceedings. * * * The district court only shall have original jurisdiction in all proceedings wherein it is sought to have a child adjudged to be a dependent or neglected child. * * *" Article 2329.

The terms "dependent child" or "neglected child" include:

"Any child under sixteen years of age who is dependent upon the public for support or who is destitute, homeless or abandoned; or who has not proper parental care or guardianship, or who habitually begs or receives alms, or who is found living in any house of ill fame or with any vicious or disreputable person, or whose home, by reason of neglect, cruelty or depravity on the part of its parents, guardian or other person in whose care it may be, is an unfit place for such child; or any such child whose parents or guardian permit it to use intoxicating liquors except for medicinal purposes or to become addicted to the use of such liquors, or permits it in or about any place where intoxicating liquors are sold." Article 2330.

The jurisdiction thus conferred upon the district court is not a probate jurisdiction at all. It is a jurisdiction which could not be conferred upon the county court under the Constitution. Whittenberg v. Craven (Tex. Com. App.) 258 S. W. 152.

It is true the act speaks of "guardianship" in connection with the award of custody and control of the minor in the exercise of the jurisdiction there conferred; yet clearly the use of such term is not in that technical sense which affects jurisdiction, as a probate matter, but rather it is used in the more general sense of indicating custody, control, education, maintenance, and the like. The disposition of minors under this act is not the act of a probate court at all, and does not operate to avoid the orders of a proper probate court any further than the exigencies of the situation require at the hands of a court of general equity jurisdiction. The matter of such probate jurisdiction is simply not affected by such act. So that, whether the Delinquent Child Act itself be constitutional or not, in no event is it an interference with the constitutional jurisdiction of the county court to appoint guardians of, and to transact all business appertaining to, minors.

While plaintiff in error has not made the point, still the question has arisen in consultation, and Judge Short entertains the view that, under our present statutes, the county court is in no event given jurisdiction where

a parent of the minor is living to appoint another person to be guardian of the person of such minor. There is nothing in the Constitution which controls this matter. It must be determined by the statutes rather.

[7] The very first article (4102) under title 69, covering the subject of guardian and ward, is a jurisdictional pronouncement authorizing the county court to appoint guardians of minors and to transact all business appertaining to the estates of minors, and the act defines minors. Article 4104. The authority there conferred is general and broad enough in terms to include all minors, whether with or without living parents. The term "minor" is not synonymous with "orphan." There is nothing in the statute which forbids the appointment of a guardian of the person for a minor, where such minor has a living parent, unless it be article 4118, which declares:

"If the parents live together, the father is the natural guardian of the person of the minor children by the marriage. If one parent is dead, the survivor is the natural guardian of the person of the minor children. The natural guardian is entitled to be appointed guardian of their estates. The rights of parents who do not live together are equal; the guardianship of their minor children shall be assigned to one or the other, taking into consideration the interest of the child alone."

Now this article is in effect but a declaration of the common law. With or without the statute there can be no doubt that, where the father is living, he is the natural guardian of his minor children, but it occurs to us that his right of custody and duty of care and maintenance, in the eyes of the law, are no greater as natural guardian than are those of the ordinary guardian by appointment. It is no doubt true that the rights of a natural guardian are in all respects equal to those of an appointed guardian, and it may be, and doubtless is, true, that the duties of the natural guardian are not in all respects identical with those of an appointed guardian. It is apparent, we think, our statutes do not contemplate that the natural guardian shall be governed in all respects by the requirements of the statute, as for instance the giving of a bond and the like. On the other hand, there is good reason to believe the statutes do contemplate that such natural guardian will comply with the statutory requirements where applicable, as for instance article 4224 requires the guardian of the person, where there is a separate guardian of the estate, annually to return to the court his sworn account showing each item of expenditure since the last account for the education and maintenance of the ward.

There is every reason to require the father to make this annual report where there is a separate guardian of the estate of the minor, to the end that the minor's estate may be properly administered. The law may well forego the requirement of a bond by the natural guardian, and with equal propriety require an annual report of the expenditures on behalf of his child, where the child's estate is being administered by the court through another. But, whether the statute regulating guardians has any application to natural guardians or not, the fact that the statute of jurisdiction confers upon the county court the general power to appoint guardians of minors without any limitations with respect to whether or not a parent lives, is entirely sufficient to authorize the jurisdiction exercised by the county court in this case. Not only does the statute not except minors whose parent lives, but the supreme purpose of the law itself was to provide for the appointment of a guardian of the person of any minor within the state where such guardian is necessary. Our entire statutes of guardian and ward are but profert of the state's solicitude for the helpless and dependent, and the statutes should be interpreted in that common sense, not to say humane, way, liberally if need be, to effectuate that purpose. This is not broadening the terms of the statute; it is merely giving it a rational construction.

If article 4118 is to be taken literally to mean that, where a parent survives, no other person can be appointed guardian of the person of his minor child, even though such parent be hopelessly insane or otherwise indisputably unfit, then indeed the greater purpose of law, to wit, the beneficent protection of minors, would in such a case be thwarted so far as the probate court is concerned. The recognition of the right of a father or mother as the natural guardian of their offspring is of course most just and even imperative, where such recognition does not involve the superior right of the child itself, but to recognize such parent's right to the destruction of the child's superior right is subversive of every principle involved. Indeed, the policy of the law is to the contrary. The very article declaring the rights of the parents as natural guardians recognizes that the interest of the child will control, for it stipulates for assigning the guardianship to one of the parents where they do not live together. The same consideration would deny both parents in a proper case.

[8, 9] It has always been so, in chancery practice at common law, and under our statutes, that a court of equity may in a proper case take the custody of the child from its parents where the best interests of the child demand such course. It is not to be supposed that our legislators, in obedience to this ancient rule, would authorize a court of equity to exercise this jurisdiction and deny it to that cherished part of our judicial system, the probate court. Undoubtedly, under our Delinquent Child Act, and even independently thereof, our district court would

have jurisdiction to consider the interest and award the custody of the child in this case. It will not do to assign that remedy as a reason why the probate court should not act in a case like this, for it is equally true that such an argument might be made. in denial of the probate court's. right to appoint a guardian of the person of a minor in any case. Of course the district court, under its general authority to control minors, would be authorized to protect the person of a minor in any case. It may be said in passing that this power is not confined to minors, but may be exercised in the protection of the liberty, rights, and person of any citizen, whether minor or adult, but this is no reason for denying the powers of the probate court expressly recognized by Constitution and statute. The wisdom of permitting this concurrent jurisdiction to an extent is for the Legislature and not for judicial cognizance.

We have not been cited to, nor have we found, any case holding that a court is without power to appoint another' to be guardian 'of the person of a minor where such minor has a parent living. Of course most, probably all, of our states, either as a relic of the common law or by force of statute, recognize the parent as the natural guardian of his minor children. And in most of the states, as indeed it should be, it has been held that the parent as natural guardian is entitled to the custody and control of his minor children, but it has been frequently held that, where such parent is unfit or incapacitated to act as guardian (Hamerick v. People, 126 Ill. App. 491; Sandine v. Johnson, 188 Iowa, 620, 176 N. W. 638; Stone v. Duffy, 219 Mass. 178, 106 N. E. 595; Matter of De Saulles, 101 Misc. Rep. 447, 167 N. Y. S. 445), or has forfeited his rights (Jordan v. Smith, 5 Ga. App. 559, 63 S. E. 595; In re Stittgen, 110 Wis. 625, 86 N. W. 563; In re Klein, 95 Wis. 246, 70 N. W. 64; Woerner, Guard. p. 90), that another may and should be appointed.

In Sandine v. Johnson, supra, the statutes of Iowa are quoted as follows:

"Parents are the natural guardians of the persons of their minor children, and equally entitled to their care and custody. * * * The surviving parent becomes such guardian, but, if there is none, the district court shall appoint one, who shall have the same power and control over his ward as the parents would have, if living."

In that case the father was dead, and the mother survived, but was insane, and the district court appointed the child's paternal uncle guardian of her person. The Supreme Court said:

"The guardian was appointed under the latter section as guardian of the person of the child, on the theory that there was no surviving parent competent to act as such guardian of the person. Here again we must broaden the terms of the statute in order to give it a rational construction. To construe this statute literally would be to say that the surviving parent, though non compos mentis, was entitled as a matter of right to the custody of the person of the minor. We think, therefore, that the guardian · was properly appointed under this section as guardian of the person of the child."

In the Klein Case, supra, it was held that the circuit court, which in that state it seems was authorized to appoint guardians, might lawfully appoint one other than the father of the minor, and the Supreme Court quoted with approval 3 Pom. Eq. Jur. § 1307, as follows:

"In addition to appointing guardians, the court of equity will, in a proper case, and to promote the highest welfare of the infant, where there is already a guardian, natural or legal, interfere, by controlling the person of the infant, and removing it personally from the custody of its natural or legal guardian, even from its own parents."

If this case should be classed as one recognizing merely the general equity powers of the circuit court over the control of minors, rather than to exercise original probate jurisdiction, nevertheless it illustrates the policy of the law generally to regard the welfare of the child rather than the rights of the parent, as the supreme test in every case.

Plaintiff in error cites two Texas cases (Cook v. Bybee, 24 Tex. 281, and Kahn v. Israelson, 62 Tex. 226) in support of his contention, but these cases are not in point. The case of Cook v. Bybee goes no further than to hold that a parent cannot assign or transfer her right of guardianship of her minor child. But the same case makes reference to a class of cases in which the parent may surrender the control of his child beyond the right again to assert it. And Kahn v. Israelson, after pointing out the difference between the statutes in force when the respective cases were decided, approved the Cook-Bybee Case as follows:

"But we see no objection to the rule announced in that case, even under the present statute, in so far as the rights of a surviving parent to the guardianship of the person of his or her minor child is concerned, for under both statutes such parent is made such guardian without the appointment of the county court; and, *unless such parent be found disqualified or unfit to have such guardianship, upon an inquiry made*, there is no power in a county court practically to withdraw from such parent the express power given by the statute, by giving control, care, and education of the minor to some other person." (Italics ours.)

[10, 11] The law is not so inexorable in its respect for parental rights, nor yet so impotent in its ability to protect helpless minors, as plaintiff in error argues. The statutes do not require the county court to recognize one as guardian whom the district court is equally required to repudiate. See De Saulles, supra. So that, we have no doubt the county court, as a court of original juris-

285 S.W.—19

diction to appoint guardians of minors, had full jurisdiction to appoint a guardian for Louise Thomason, notwithstanding her father was then living.

[12] This brings us to the only question urged by plaintiff in error; that is, that the county court had no jurisdiction because that court had made no order removing him as guardian of the person of a child. This question, too, is practically a moot question. It is purely academic in the present state of the case. The county court, it is true, did not make any order removing plaintiff in error as guardian of the person of his child, but it is likewise true the only order he made, in so far as the present case is concerned, was in plaintiff in error's favor. He made an order revoking and setting aside his former order appointing defendant in error temporary guardian and refusing to make permanent her appointment. In the district court the cause was dismissed. The necessity for passing upon the form of the removal of plaintiff in error has never arisen. The situation is this: Under the decision of the Court of Civil Appeals, the cause has been remanded to the district court for trial upon the merits of the controversy. That controversy arises upon an application of defendant in error asserting that plaintiff in error is the father of the minor, but that he is unfit and incapacitated to serve in such capacity, and asking that she be appointed as such guardian of the person. This is broad enough to demand the removal of plaintiff in error. The plaintiff in error is in court, and has joined issue. We have held that the county court had jurisdiction of such cases, and of course it follows that the district court has such jurisdiction on appeal. Upon a trial upon the merits, if petitioner should prevail, the court will enter such a judgment as she would be entitled to. This, we conceive, would embrace a finding that plaintiff in error is an unfit person for the guardianship of the person of the minor, and removing him in all respects as guardian of the person of such minor, and appointing the applicant to be such guardian. It may be that a mere order appointing another to be guardian of the person where the father was actually a party to the record and present in court at its rendition, would have the necessary legal effect to remove him as natural guardian, or at least to bind him by way of estoppel by judgment, but this is purely speculative, and is a question not before us, and one which we do not in any wise decide.

[13] What we have said, of course, bespeaks the right of defendant in error to raise, and of the probate court to decide, the question of the removal of plaintiff in error from the office of guardian of his child. Unfitness does not come literally within the grounds stated by statute for removal of a guardian (article 4234), but it undoubtedly does come within the spirit of the law. How can one obey the orders of the court imposing a guardianship of the person, where such guardian is wholly incapacitated or unfit for such service? The order implies a service which the guardian cannot render. But, aside from this, article 4109 expressly declares any person has the right to appear and contest the appointment of any particular person as guardian, or to commence any proceeding which he considers beneficial to the ward. Thus is the law rich in relief where the injury is great and the necessity urgent.

We therefore recommend that the judgment of the Court of Civil Appeals, reversing this cause and remanding it to the district court for trial upon its merits, be in all respects affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.