11 Wis.2d 560 (1960)
STATE EX REL. REYNOLDS, Petitioner,
v.
COUNTY COURT OF KENOSHA COUNTY and another, Respondents.
Supreme Court of Wisconsin.
September 15, 1960.
November 4, 1960.
*563 For the petitioner there was a brief and oral argument by John W. Reynolds, attorney general, Nathan S. Heffernan, deputy attorney general, William A. Platz, assistant attorney general, and Joseph B. Molinaro, district attorney, and Vivian H. Newton, assistant district attorney, of Kenosha county.
*564 For the respondents there were briefs and oral argument by William A. Sheldon, Leo E. Vaudreuil, and David L. Phillips, all of Kenosha.
HALLOWS, J.
Sec. 3, art. VII, Const., grants three separate powers to this court: Appellate jurisdiction, general superintending control over all inferior courts, and the power to issue the "high writs" and other original and remedial writs.[1] The nature and scope of the superintending power of this court has been discussed and explained from the earliest times. Attorney General v. Blossom (1853), 1 Wis. 277 (*317); Attorney General v. Railroad Companies (1874), 35 Wis. 425; State ex rel. Fourth Nat. Bank of Philadelphia v. Johnson (1899), 103 Wis. 591, 79 N. W. 1081; State ex rel. Umbreit v. Helms (1908), 136 Wis. 432, 118 N. W. 158. The rule established in these cases is well stated in State ex rel. Fourth Nat. Bank of Philadelphia v. Johnson, page 618:
"... the constitutional grant of superintending control over all inferior courts vested in this court an independent and separate jurisdiction enabling and requiring it, upon sufficient occasion, by the use of all proper and necessary writs to promptly restrain the excesses and quicken the neglects of inferior courts in the absence of other adequate remedy, ..."
It was pointed out that this grant of power was unlimited in extent, indefinite in character, unsupplied with means and instrumentalities, and from history of the common law we *565 know that the superintending power of the King's Bench was principally exercised by the writs of mandamus, prohibition, and certiorari, and at one time by the writ of procedendo by the court of chancery. The superintending power includes the review of judicial actions of inferior courts and extends to judicial as well as jurisdictional errors committed by them. In exercising this power of superintending control, this court is not restricted to the use of commonlaw writs and is limited only by the necessities of justice. It may use such common-law writs and means as are applicable, or expand the ordinary use of such writs to meet the exigencies and necessities of the case before it. In discussing the supervisory power in State ex rel. Tewalt v. Pollard (1901), 112 Wis. 232, 234, 87 N. W. 1107, this court said:
"Since the case of State ex rel. Fourth Nat. Bank v. Johnson, 103 Wis. 591, there seems to be little necessity of discussing the nature and extent of the jurisdiction of this court by way of a superintending control over inferior courts. It is a high power, which enables this court, by the use of all necessary and proper writs, including the writ of prohibition, to control the course of litigation in inferior courts when such a court either refuses to act within its jurisdiction, or acts beyond its jurisdiction, to the serious prejudice of the citizen. But this court will not exercise its jurisdiction when there is another adequate remedy, by appeal or otherwise, nor unless the exigency is of such an extreme nature as obviously to justify and demand the interposition of the extraordinary superintending power of the court of last resort of the state. State ex rel. Meggett v. O'Neill, 104 Wis. 227; State ex rel. Milwaukee v. Ludwig, 106 Wis. 226."
The question is whether this court now should exercise this prerogative authority and to what extent. It is urged upon us that this matter involves questions of publici juris, of interference with the constitutional right of a citizen to the writ of habeas corpus, the usurpation by the county court *566 of Kenosha county of the jurisdiction of the municipal court of Racine county, and an unwarranted and unjustified interference with the orderly administration of justice. The respondents urge this court to exercise its superintending control over inferior courts, claiming an unlawful interference by the municipal court of Racine county with the jurisdiction of and orderly administration of justice by the county court of Kenosha county. Because of the importance of the issues involved, we consider it our duty to exercise our superintending power.
The tragedy of errors upon which this action is founded began on September 1, 1960, when Kenosha County Judge HAROLD M. BODE had an appliance store in Kenosha install a portable air conditioner in his chambers. The record does not show whether this was done in his personal capacity or as county judge or by the court. On September 2d, Judge BODE wrote Lindgren to inform him of the installation on a temporary approval basis. If purchased, the air conditioner would cost approximately $250 and, if not purchased, Kenosha county would be liable for the installation and rental until removed. In justification of the arrangement, the letter stated the judge had been faced with five juvenile hearings in his office and the temperature and humidity were so bad he would have had to adjourn the hearings. The letter then expressed hope that the problem of air conditioning first brought to the attention of the building and printing committee on October 8, 1959, would be disposed of prior to the time the judge felt obligated to return or to purchase the air conditioner. An invitation was extended to the purchasing agent-clerk and the committee to examine the air conditioner and determine its suitability.
A blistering reply letter of the same date was sent by the clerk to the county judge, informing him that Kenosha county had no obligation for the air conditioner and suggested the judge read ordinance 26 relative to purchasing. *567 The judge was reminded that there were two other courts and three other judges in the building who, the clerk was sure, would like air conditioning but who had not, without authority of the county board, ordered air conditioners installed and the courts across the hall were able to, and were, doing their work without air conditioners. The letter closed with the statement that air conditioners in the courthouse would be ordered and paid for by Kenosha county when the county board authorized it and until that time the judge could pay for the rental and installation of the air conditioner. A copy of the letter was sent to the appliance dealer and the chairman of the county board.
The record discloses that there followed some conversation between the judge and the county clerk. On the same day the court issued an order to show cause entitled, "In the Matter of Air-Conditioning the County Court Chambers," ordering Lindgren to show cause why he should not be held in contempt of court for interfering with the performance of its judicial function by countermanding (sending a copy of his letter to the appliance dealer) the prior order of the court to the appliance dealer for the installation of the air conditioner.
On September 6, 1960, at the hearing on the order, the county judge apologized to the people in the courtroom for holding court under the very humid and hot condition with the windows closed and explained that if the windows were opened there was so much noise the phonographic reporter would be unable to get what was transpiring. The court then examined Lindgren concerning whether the clerk had requested the issuance of the order to show cause. An impasse was soon reached. Six times the judge inquired in effect whether the clerk had requested him to issue the order to show cause, and six times Lindgren ignored the question and stated he wished to make a statement to the court. The court asked the sheriff to be called and, while *568 waiting for him, the court stated the hearing was on the order to show cause which was read. Lindgren was then asked what his plea was to the order. Again an impasse resulted. Lindgren repeated he wished to make a statement to the court and was told he would be allowed no statement until he pleaded. Eight times the court asked Lindgren whether he was guilty or not guilty, and eight times received the frustrating reply that Lindgren wished to make a statement to the court. The court then ordered the clerk confined in jail until he would say that he was guilty or not guilty.
About an hour later the court reconvened. The judge stated the nature of the hearing and explained the law required him to keep the courtroom open but conducting court in such tremendous heat and humidity was not his way that a court should be conducted, that he had called the matter to the attention of the authorities for their assistance in order that the people of the community could have justice expedited, that the conditions prevented him from judicially exercising the prerogatives of the court and from fulfilling his responsibility, and in the absence of anything being done he proposed to do something about it. Lindgren was then asked for his plea and was told he could make any statement he chose if he answered. After receiving no response from Lindgren to 10 questions concerning whether he desired to plead or whether he was going to plead or whether there was any reason why he could not answer, the court found Lindgren in contempt for refusing to plead to the charge and ordered him committed to jail until he would plead.
The next day after the other judges in Kenosha county disqualified themselves, Lindgren, represented by the district attorney's office of Kenosha county, applied to the municipal court of Racine county for a writ of habeas corpus. The petition for the writ stated the cause of Lindgren's confinement was his refusal to enter a plea to a charge in *569 the order to show cause which arose out of a prior order issued by the county judge whereupon the county court ordered the petitioner committed to the custody of the sheriff. A copy of the order of commitment was attached. It was alleged in the petition that the commitment was illegal because the verbal order for the installation of the air conditioner was not an order or process of the county court and no rights or remedies of a party in an action or proceeding were pending or triable in such court. The writ was issued returnable at 11:30 a. m. the same day.
In the return to the writ, the sheriff stated that the judge purchased an air conditioner without the knowledge, consent, approval, or order of the purchasing agent, and had informed the clerk by letter that the air conditioner was installed and Kenosha county would be liable for the rental and installation, that the county clerk wrote to the county judge that Kenosha county was not obligated therefor, requesting compliance with ordinance 26, and stating that a copy of the letter had been sent to the appliance dealer; that on return of the order to show cause Lindgren for an answer thereto stood mute and was thereupon found in contempt of court and ordered confined in the county jail until such time as he was prepared to enter a plea, that Lindgren was in his custody by virtue of an order of the county court finding Lindgren in contempt. A copy of the order was made a part of the return.
Upon this return Lindgren was admitted to bail. A notice was given to the county judge, stating a writ of habeas corpus had been issued to inquire into the cause of the imprisonment of Lindgren, and the hearing would be held September 15th at which time the judge could attend if he thought proper.
On the same day, September 8th, the county judge issued an order to show cause to the sheriff of Kenosha county entitled "In the Matter of Air-Conditioning the County *570 Court Chambers" why he should not be held in contempt of court for failing to keep Lindgren in his custody. Upon the hearing of the order the county court ordered the sheriff to rearrest Lindgren and found the sheriff in contempt and the coroner of Kenosha county was ordered to take custody of the sheriff and confine him to the county jail until the sheriff or his subordinates delivered Lindgren before the court. The hearing was adjourned and later reconvened when the sheriff appeared with Lindgren. The court again found the sheriff in contempt for having released Lindgren. After exacting a promise from the sheriff to keep Lindgren in his custody until the county court directed his release or until the supreme court amended the order, the court withheld the punishment of the sheriff for the contempt pending the performance by the sheriff of the court's order to keep Lindgren in custody.
The following day the attorney general of Wisconsin petitioned this court to invoke its superintending control over inferior courts. This court entered an order requiring the county court of Kenosha county and the Honorable HAROLD M. BODE to show cause why the petition should not be granted and enjoined any interference with the liberty of Lindgren pending the hearing on the petition.
The Kenosha county court was in error in holding the sheriff in contempt of court for releasing Lindgren pursuant to the authority of the Racine municipal court. By the writ of habeas corpus the sheriff was required to produce the petitioner before the court issuing the writ. Sec. 292.16, Stats. That is the purpose of the writ of habeas corpus. The county court grounded the contempt on the fact that the sheriff had violated its order to keep Lindgren in jail until it had released him or the supreme court modified the order. The sheriff, through no fault of his own, was between Scylla and Charybdisthe classic dilemmain contempt of the county court if he released Lindgren and in contempt of the municipal *571 court if he did not. When the sheriff produced Lindgren pursuant to the writ of habeas corpus the prisoner was then in the custody of the municipal court. Ferris, Extraordinary Legal Remedies, Habeas Corpus, p. 64, sec. 48. It is the duty of all persons to respect and obey a writ of habeas corpus. Sec. 292.16. 3 Wharton's, Anderson, Criminal Law and Procedure, Criminal Contempt, p. 740, sec. 1351.
Actually, the sheriff did not release Lindgren. He merely produced him before the municipal court which let him out on bail. Upon the return of the writ of habeas corpus in the Racine municipal court, the original restraint placed upon Lindgren by the contempt order of the county court was suspended during the pendency of the habeas corpus proceeding. The safekeeping and the custody of the prisoner were exclusively under the authority and the direction of the municipal court which had issued the writ and to which the return was made. From then on in point of time, the prisoner was not detained under the original commitment, but under the authority of the writ. Barth v. Clise (1870), 79 U. S. (12 Wall.) 400, 20 L. Ed. 393; State v. Brill (1957), 1 Wis. (2d) 288, 83 N. W. (2d) 721. See 25 Am. Jur., Habeas Corpus, p. 245, sec. 148. By sec. 292.25, Stats.,[2] the court or judge in a habeas corpus proceeding, until judgment is rendered upon the return, has the power to determine the custody of the prisoner. The municipal court of Racine, although a statutory court of limited jurisdiction, has the power to issue the writ of habeas corpus. Such jurisdiction is conferred by the act of the legislature creating the municipal court. Jones v. State ex rel. Falligant (1933), 211 Wis. 9, 247 N. W. 445.
*572 The Kenosha county court's commitment of Lindgren for contempt, being suspended upon the return to the writ, the sheriff should have been allowed to present this defense at the contempt hearing. The sheriff committed no wilful act which constituted a contempt when he obeyed the writ. The county court should have recognized that the municipal court had the habeas corpus proceeding pending and should not have interfered with its custody of Lindgren by holding the sheriff in contempt and ordering him to retake Lindgren in his custody.
The respondents argue that sec. 292.21, Stats., requires the writ of habeas corpus to be quashed because it appeared on the face of the petition and the return that Lindgren was in custody by reason of a contempt which was specially and plainly set forth in the commitment order. Under this section a court must make a final order to remand the prisoner in a habeas corpus proceeding when it appears he is detained in custody for any contempt specially and plainly charged in the commitment by some court having authority to commit for the contempt so charged and the time during which such party may be legally detained has not expired. We do not agree with the attorney general that there was no commitment and that the contempt was not specially and plainly charged by a court having authority to commit for the contempt. The petition for the writ and the return showed that Lindgren was detained for contempt, what the charge was, and the act which the county court found constituted a contempt. At any time during the proceedings when the grounds for remand appear the court must remand the prisoner. In re Booth and Rycraft (1854), 3 Wis. 144 (*157); In re Rosenberg (1895), 90 Wis. 581, 63 N. W. 1065, 64 N. W. 299; and when the petition for the writ prima facie does not show sufficient grounds for its issuance, the writ should not be granted. In re Griner (1863), 16 Wis. 447 (*423); State ex rel. Reynolds v. Circuit Court (1927), *573 193 Wis. 132, 214 N. W. 396. Likewise, if grounds for remand appear on the face of the writ or the return, no hearing is necessary. In re Booth and Rycraft, supra.
The power to punish for contempt is a vital and important power of the courts and the writ of habeas corpus cannot be used in such a way as to interfere with the courts' power and authority to administer the law. 25 Am. Jur., Habeas Corpus, p. 213, sec. 92. The statutes carefully limit the use of the writ when contempts are involved. In addition to sec. 292.21, Stats., no judge or court shall inquire into the legality or justice of an order committing for contempt. Sec. 292.22 (2). Although many states allow the writ to inquire into the acts constituting the alleged contempt, 25 Am. Jur., Habeas Corpus, p. 214, sec. 94, such is neither the statutory nor the case law in this state. The inquiry of the writ, if such writ is proper on the face of the pleadings, is restricted to the question of the jurisdiction of the committing court. Errors in the exercise of jurisdiction are not reviewable by this collateral remedy. Petition of Crandall for a Habeas Corpus (1874), 34 Wis. 177; In re Stittgen (1901), 110 Wis. 625, 86 N. W. 563; In re Shinski (1905), 125 Wis. 280, 104 N. W. 86; In re Cash (1934), 215 Wis. 148, 253 N. W. 788; Larson v. State ex rel. Bennett (1936), 221 Wis. 188, 266 N. W. 170; on nature and scope of habeas corpus generally, see 25 Am. Jur., Habeas Corpus, pp. 211, 212, secs. 91, 92; and Ferris, Extraordinary Legal Remedies, Habeas Corpus, p. 21.
The attorney general argues that the county court had no authority to commit Lindgren for contempt because there was no proceeding pending. The petition stated that the imprisonment was illegal and contrary to law and no rights or remedies of a party in an action or proceeding were pending or triable in such court. While these allegations might be construed sufficient to state that the county court had no jurisdiction in a civil contempt, they do not show that the *574 county court did not have jurisdiction to commit for a criminal contempt.
Some confusion exists as to the nature of the contempt. The form of the commitment conforms to sec. 253.22, Stats., which applies to county courts. The attorney general argues that it was a civil contempt; the respondents, a criminal contempt. The distinction between the two is not always easy of definition. Both types of contempt may exist together. Gompers v. Bucks Stove & Range Co. (1911), 221 U. S. 418, 31 Sup. Ct. 492, 55 L. Ed. 797. For review of Wisconsin cases dealing with the distinction, see 9 Wisconsin Law Review, 1933-1934, Contempt, pp. 166, 278. The contempt involved here was a criminal contempt.
The view we take of the facts is that the county court was starting a special proceeding to determine the necessity of air-conditioning the county court chambers, which the judge used as a courtroom for juvenile cases. At the start of the hearing the court stated the problem existing about air conditioning. The court had apparently called the need to the attention of the purchasing agent, Lindgren, and the proper county officers, without success. The judge arranged for the installation of a portable air conditioner on an approval basis. The record does not disclose any court order for such installation, although in the order to show cause, which started the proceeding, an order is referred to. Lindgren was ordered to show cause why he was not in contempt of the court for interfering with the performance of its judicial function by countermanding this arrangement. The proceeding did not proceed very far. Lindgren refused to plead. It is argued he had no duty to plead, because if a criminal contempt was charged he was entitled to stand mute, and in a criminal case no person shall be compelled to be a witness against himself, sec. 8, art. I, Const., and under sec. 955.08, Stats., the court should have entered a plea on *575 his behalf. Proceedings for criminal contempt are treated for many purposes as a criminal action, although they are not the same. Contempt proceedings are unique in their nature and are generally considered as sui generis. However, as a matter of practice we believe that sec. 955.08 applies to criminal contempts where summary proceedings are not proper.
While refusing to plead, Lindgren did not stand mute, but rather defied the court with his determination to conduct the proceedings in the manner which he chose. It is not so much the nature of the act itself which determines contempt, but rather the manner in which it is committed and its resultant injury to the dignity and authority of the court. The record shows Lindgren's attitude and actions amounted to insolent behavior, which is ground for contempt. Sec. 256.03 (1), Stats. If the court had found Lindgren in contempt for his behavior in the courtroom, we would have a different question before us. Refusing to plead to the charge in an order to show cause is not sufficient to constitute contempt. An order to show cause does not call for a plea.
Although the finding of Lindgren in contempt was erroneous, it was not void. The court had jurisdiction to conduct the proceeding ex parte to determine whether air conditioning was necessary to function efficiently as a court and to perform its duties. Such proceedings are not without precedent. Early in the history of this state, it was established that courts of record had an inherent power to appoint such assistants as they deemed necessary to expedite and properly conduct judicial business. In the landmark case, In re Janitor of Supreme Court (1874), 35 Wis. 410, this court decided the power to remove or appoint its janitor was vested exclusively in this court, stating, at page 419:
"This principle is well settled and familiar, and the power so essential to the expedition and proper conducting of judicial *576 business, that it may be looked upon as very doubtful whether the court can be deprived of it. As a power judicial and not executive or legislative in its nature, and one lodged in a co-ordinate branch of the government separated and independent in its sphere of action from the other branches, it seems to be under the protection of the constitution, and therefore a power which cannot be taken from the court, and given to either the executive or legislative departments, or to any officer of either of those departments."
No action or proceeding was pending in this court which gave rise to the opinion.
The circuit court's inherent power to appoint a bailiff was recognized in Stevenson v. Milwaukee County (1909), 140 Wis. 14, 121 N. W. 654, in which a bailiff appointed by the circuit court sued the county to collect for his services.
The court's power to determine its necessities to function efficiently as a court and perform its duties was again considered in In re Court Room (1912), 148 Wis. 109, 134 N. W. 490. The county board of Milwaukee county proposed to provide for the circuit court rented quarters which were not suitable or convenient for holding court because they did not include a jury room. The circuit court made an order reciting the facts in detail concerning the adequacy and convenience of its existing court facilities, the inadequacy and inconvenience of the proposed quarters, and the manner in which the proposed quarters would unreasonably curtail the court's powers and materially impair its efficiency. The ex parte order then established the court in the quarters it was occupying and ordered the county board and others to take notice thereof. Milwaukee county and the county board appeared specially and objected to the jurisdiction of the court, claiming at the time of the making of the order no proceeding was pending and the court had no jurisdiction. On appeal, this court held that in order to preserve the full and free exercise of its judicial functions the circuit court *577 could make in an appropriate case an ex parte order without formally instituting an action to secure the desired results. After citing authorities for this proposition, including cases from other states, the court stated, at page 122:
"In some of the cases above cited it is likened to a contempt proceeding which the judge has a right to dispose of in a summary manner. The order here made, although absolute in form, was not so in fact. The appellant had the right to move to set it aside and to have it vacated if erroneous for any reason, and might make any proper showing of fact or law at its command on the hearing of that motion, and was entitled to have the same considered and disposed of in a fair and impartial manner. So the order in practical effect amounted to nothing more than an order to show cause, coupled with a temporary restraining order operative until a hearing was had. This being so, all appearance of autocratic action by the circuit judge would have been avoided had an order to show cause, with a temporary restraining order, been issued in the first instance, and we think it would have been the better practice to have instituted the proceeding in that way. But the difference between the two methods of procedure is one of form rather than of substance, and the circuit judge had jurisdiction to proceed in either way."
Three justices who concurred in the opinion did not concur with the suggestion that the practice adopted by the circuit court in making the initial order without notice or hearing was not the best practice for exercising the inherent power of the court to prevent interference with its proceedings and the conduct of its administrative affairs.
True, in the instant case the county court did not make its record showing the necessity for air conditioning, as in In re Court Room, supra, and either procedure outlined therein is preferable to the method used by the county court. However, the county court had the jurisdiction to institute on its own motion the proceedings to determine the question of the necessity for air conditioning and that was what it was *578 ineptly doing. Whether or not air-conditioning of the Kenosha county court room is necessary to its functioning as a court is a question which is not presented and not decided.
The Kenosha County Bar Association is to be commended for its public service in furnishing the able attorneys to represent the county court and County Judge HAROLD M. BODE in this court. When the Kenosha county district attorney's office chose to represent the county purchasing agent-clerk in the habeas corpus action a conflict of interest arose, and there was no public attorney to represent the county court and county judge.
By the Court.The county court of Kenosha county is enjoined from interfering with the liberty of Floyd P. Hughes, the sheriff of Kenosha county, and of Richard Lindgren, the purchasing agent-clerk of Kenosha county because of matters heretofore arising out of the proceeding in the county court of Kenosha county entitled, "In the Matter of Air-Conditioning the County Court Chambers." The municipal court of Racine county is directed to quash the writ of habeas corpus in the proceeding entitled, "In the Matter of the Application of Richard Lindgren for a Writ of Habeas Corpus." Any further action in either proceeding shall be consistent with this opinion.
FAIRCHILD, J. (concurring in part; dissenting in part).
I concur in the decision of this court to enjoin the county court of Kenosha county from interfering with the liberty of the sheriff and the county clerk. I do not agree with some of the conclusions expressed in the opinion.
I.
From my study of the record, this appears to have been the situation:
*579 Judge BODE made an arrangement with an appliance firm to install an air conditioner on approval. He hoped the county would buy it, but took the position that if it did not, it would nevertheless be liable for the installation and rental. Any "order" that he gave the appliance firm was an "order" in the commercial sense only. There was no proceeding before the court, and no order was issued by the court. This occurred September 1st. I can see no greater significance or dignity in Judge BODE'S "order" at this point than if the same air conditioner had been ordered by the sheriff for his office.
On September 2d, Judge BODE notified Mr. Lindgren of his position, and Mr. Lindgren disputed the judge's authority to obligate the county in this manner. I do not agree with the majority's characterization of Mr. Lindgren's letter as "blistering." It was emphatic, to be sure, but at this point there was simply a collision between the view of one public servant that he was authorized to obtain certain equipment for his office, and a denial by the officer charged with the duty of purchasing supplies that the proposal was duly authorized or in the public interest. (Mr. Lindgren was purchasing agent as well as county clerk.) Judge BODE had sent the appliance firm a copy of his letter to Mr. Lindgren; Mr. Lindgren sent the firm a copy of his reply.
Up to this point there was no proceeding before the county court. Evidently it then occurred to Judge BODE that his arrangement with, or "order" to the appliance firm could be considered an order of the county court, and that Mr. Lindgren had interfered with, and attempted to countermand this "order" by sending the firm a copy of his reply. Thereupon Judge BODE issued an order to Mr. Lindgren that he show cause why he should not be held in contempt for such interference. The order closed with the words, set out in capital letters in a separate line: "FAIL NOT AT YOUR PERIL."
*580 Then a proceeding took place before the court in which the court repeatedly insisted on a plea of guilty or not guilty, and Mr. Lindgren repeatedly answered that he wanted to make a statement to the court. The court then directed the sheriff to confine the clerk until he should plead. Later, the court had Mr. Lindgren brought back, and in response to repeated requests by the court to plead guilty or not guilty, he stood mute.
Although the papers are captioned "In the Matter of Air-Conditioning the County Court Chambers," and although the judge made one statement apologizing to those present for the hot and humid conditions, and another explanation "to alleviate the discomfort of the people in this court today," which he characterized as "background," I cannot agree with the view of the majority that "the county court was starting a special proceeding to determine the necessity of air-conditioning the county court chambers." It is true that the court could have instituted and heard such a proceeding, and it might well have resulted in a writ of mandamus or other order of the court which Mr. Lindgren would have been obliged to obey unless reversed on appeal. The authorities cited by the majority would sustain such procedure. It would be orderly, and consonant with the obligations which the different branches of government owe to each other. But what was attempted here was to have the court punish the county clerk for disagreeing with the judge, in a matter not yet before the court, and in which each had a duty to the public.
In any event, the county court has no authority to imprison one who is charged with criminal contempt in order to compel him to plead guilty or not guilty. I will pass over the fact that the contempt proceeding was not properly commenced. Whether properly commenced or not, it had no merit.
*581 In substance it was a proceeding for criminal contempt, although not brought in the proper form. Presumably the theory was that Mr. Lindgren had wilfully resisted an order of the court. Sec. 256.03 (4), Stats. In that proceeding, the defendant need not plead. Sec. 8, art. I of the constitution, provides that no person shall be compelled in any criminal case to be a witness against himself. This applies in criminal contempt cases. State ex rel. Rodd v. Verage (1922), 177 Wis. 295, 317, 187 N. W. 830. The present majority opinion states that sec. 955.08 applies to criminal contempts where summary proceedings are not proper. This means that when Mr. Lindgren refused to plead, the court should have entered a plea of not guilty in his behalf. The court had no more power to compel him to plead than it would have on a criminal prosecution. Even in a case of civil contempt, where the court is authorized to require answers to interrogatories, the court must frame questions of fact, and allow a reasonable time for answer. Sec. 295.12.
In my opinion, the conviction for refusal to plead was a nullity.
II.
I do not agree that the judge of the municipal court of Racine county was required by sec. 292.21 (3), Stats., to remand Mr. Lindgren to custody. An examination of the papers before Judge DUROCHER, the petition for writ of habeas corpus, and the sheriff's return, show the following propositions:
1. The petition alleged that the "order" for the air conditioner was not a process or order lawfully issued or made by the county court. The return did not deny this allegation, but alleged that Judge BODE "placed an order and purchased ... a portable air conditioner ..."
*582 2. The petition alleged "that no rights or remedies of a party in an action or proceeding were pending or triable in such court." Thus, the proceeding was not in civil contempt.
3. There was no commitment other than a transcript of an oral order, certified by the reporter. The only matter charged as a contempt therein was "refusing to plead to the charge." I pass over the questions whether this paper was a "commitment" and whether the contempt was "specially and plainly charged;" both must be true before sec. 292.21 (3), Stats., requires a final order of remand on habeas corpus. But it seems clear to me that if the papers did not conclusively show that the court had no authority to compel the county clerk to enter a plea, they, at least, raised a substantial question as to whether there was such authority. If a court does not have authority to commit for the contempt charged, sec. 292.21 (3), does not require that the prisoner be remanded.
The judge of the municipal court of Racine county was in an unenviable position. He had before him a record of action by a court of a neighboring county which appeared to embody the sort of arbitrary imprisonment from which the writ of habeas corpus was designed to protect us. An unauthorized invasion of the liberty of the county clerk would be most serious. Judge DUROCHER was undoubtedly uncomfortably aware, as were the members of this court in the first days of September, of the extraordinary heat wave then prevailing, and could conclude that the same condition in Kenosha might explain, though not justify, why an otherwise judicial temperament departed from the guideposts of judicial conduct. In my opinion, Judge DUROCHER quite properly set the county clerk free upon bond until such time as the legal issues before him could be determined.
I am authorized to state that Mr. Justice BROWN joins in this opinion.
NOTES
[1] "SUPREME COURT, JURISDICTION. Section 3. The supreme court, except in cases otherwise provided in this constitution, shall have appellate jurisdiction only, which shall be coextensive with the state; but in no case removed to the supreme court shall a trial by jury be allowed. The supreme court shall have a general superintending control over all inferior courts; it shall have power to issue writs of habeas corpus, mandamus, injunction, quo warranto, certiorari, and other original and remedial writs, and to hear and determine the same."
[2] "CUSTODY OF PRISONER PENDING PROCEEDINGS. Until judgment be given upon the return the court or judge before whom the prisoner is brought may either commit him to the custody of the sheriff or place him in such care or under such custody as his age and other circumstances may require."